IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEGWAY INC., DEKA PRODUCTS LIMITED PARTNERSHIP, and NINEBOT (TIANJIN) TECHNOLOGY CO., LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| SEGAWAY, | ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Segway Inc., DEKA Products Limited Partnership, and Ninebot (Tianjin) Technology Co., Ltd., by way of Complaint against Segaway, allege as follows:

## THE PARTIES

1.     Segway Inc. ("Segway") is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 14 Technology Drive, Bedford, New Hampshire 03110.   Segway is an innovative technology company that designs, develops, manufactures, distributes and services patented personal transporters that have been publicly sold in the United States since 2002.   Segway is the leader in personal, green transportation.   Since the introduction of the SEGWAY® Human Transporter (now known as the SEGWAY® Personal Transporter ("PT")) in 2001, Segway has also established itself as a leader in the emerging small electric vehicle space.   The SEGWAY brand name is widely recognized and famous.

2.     DEKA Products Limited Partnership ("DEKA") is a limited partnership organized and existing under the laws of the state of New Hampshire, having a principal place of business at 340 Commercial St., Ste. 401, Manchester, New Hampshire 03101.   DEKA's sole general partner is DEKA Research & Development Corp., a New Hampshire corporation that

focuses on the research and development of innovative technologies, including certain technologies on which Segway's patented personal transporters are based.

3.        Ninebot (Tianjin) Technology Co., Ltd. ("Ninebot") is a corporation organized and existing under the laws of the People's Republic of China, having a principal place of business at Building 9, Jiasuqi, Tianrui Rd Science and Technology Park Center, Auto Industrial Park, Wuqing, Tianjin, China.  Ninebot manufactures personal transporters under the "Ninebot" brand name.

4.        On information and belief, Segaway is a company that is not registered under the laws of any of the 50 states, but that lists its principal place of business at 3940 Laurel Canyon Blvd. # 376, Studio City, CA 91604.

5.        On information and belief, Segaway is in the business of designing, manufacturing or having manufactured, and selling products such as personal transporter devices.

## JURISDICTION AND VENUE

6.        This action arises under the patent laws of the United States.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7.        On information and belief, Segaway is subject to personal jurisdiction in this District because it has conducted and does conduct business within the United States and the State of Delaware.  On information and belief, Segaway, directly or through intermediaries (including distributors, retailers, and others) ships, distributes, offers for sale, sells, and advertises products that infringe the patent claims involved in this action in this District.   For example, Segaway advertises products that infringe the patent claims involved in this action on its nationally accessible interactive website.   *See, e.g.*, Segaway, http://www.segawayhoverboard.com.  In addition, on information and belief, consumers from

anywhere in the country, including Delaware, can purchase products that infringe the patent claims involved in this action directly from Segaway's nationally accessible interactive website. Segaway has purposefully availed itself of the privileges of conducting business in the United States, and more specifically in this District. On information and belief, Segaway sought protection and benefit from the laws of the State of Delaware by placing infringing products into the stream of commerce through an established distribution channel with the awareness and/or intent that they will be purchased by consumers in this District.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and/or 28 U.S.C. § 1400(b).

## SEGWAY AND ITS PERSONAL TRANSPORTERS

9.    Segway is a worldwide industry leader in the personal transportation industry. Segway's goods and services are promoted using the domain name Segway.com.

10.    Segway created the market for personal transporters when it introduced the first self-balancing, zero-emission personal vehicle in 2001: the SEGWAY® Human Transporter (now known as the SEGWAY® Personal Transporter ("PT")). Founded on a vision to develop highly-efficient, zero-emission transportation solutions using dynamic stabilization technology, Segway's research and development was focused on creating devices that took up a minimal amount of space, were extremely maneuverable and could operate on pedestrian sidewalks and pathways.

11.    Since August 2006, Segway has sold its second generation of personal transporter vehicles, which include the patented LeanSteer$^{TM}$ technology. The initial second generation models included the i2, with thin non-marking tires for most urban and suburban paved surfaces, and the x2, with deeply-treaded, all-terrain tires for off-road uses. A true and accurate copy of the manual included with the i2 and the x2 is attached hereto as Exhibit A.

3

12.     As noted above, Segway has been using the SEGWAY Marks since 2001. On December 3, 2001, Segway adopted and trademarked the name SEGWAY.  That same month, the SEGWAY PT, the world's first electric, two-wheeled, self-balancing transportation device was unveiled on *Good Morning America*.  On March 29, 2002, Segway auctioned three limited edition SEGWAY PTs on Amazon.com to benefit FIRST (For Inspiration and Recognition of Science and Technology), a non-profit organization founded by renowned inventor Dean Kamen.  The auction generated a combined total of $364,800 for FIRST with bids made from across the country.  On November 8, 2002, *Popular Science* magazine awarded the SEGWAY PT with a 2002 "Best of What's New" Award in the general technology category. *Popular Science* reviews thousands of new products and innovations each year to honor the world's most outstanding products.  The SEGWAY PT was among only 100 winners.  On November 18, 2002, SEGWAY PTs went on sale to the public for the first time on Amazon.com.

13.     In February 2003, Defense Advanced Research Projects Agency ("DARPA") contracted with Segway to convert fifteen SEGWAY PTs into Segway Robotic Mobility Platforms.  Segway developed the platform to serve as a reliable cost-effective tool for research institutions and delivered the units to DARPA in April 2003.  In October 2004, the U.S. Department of Transportation/Federal Highway Administration released a study entitled "Characteristics of Emerging Road and Trail Users and Their Safety."  It was undertaken to clarify the operational characteristics of both motorized and non-motorized transportation users. The SEGWAY PT was found to have the second-shortest braking distance, highest eye heights, one of the smallest footprints and the quickest perception-reaction time.  On November 29, 2004, *TIME* magazine featured Segway's concept four-wheel ATV prototype as one of the "Best

Inventions of 2004." This prototype served to showcase Segway's cutting-edge technology and world-class engineering.

14.     In a ceremony held at Walt Disney World® Resort's Epcot® on December 12, 2005, the ten thousandth participant in the "Around the World at Epcot" tour was awarded a SEGWAY PT from Segway. "Around the World at Epcot" is a two-hour guided SEGWAY PT tour that travels throughout the World Showcase before it opens to other park guests. On February 7, 2006, Segway became an Official Licensee for the Turin 2006 Winter Olympics. As part of a joint venture with Segway's Italian distributor, twenty SEGWAY PT "Special Edition" models were produced and used by the event's organizing committee to travel around the three Olympic Villages in Turin, Bardonecchia and Sestriere. The German Federal Board for Road Traffic completed a three-month study in March 2006 called "Segway in Public Spaces." The SEGWAY PT's braking, steering and general handling were found to be very favorable.

15.     In August 2006, Segway launched the tagline, "Simply Moving," along with a comprehensive marketing campaign to support Segway's innovative technology and convey the many ways consumers and commercial customers could simply incorporate SEGWAY PT mobility into their everyday lives. On September 10, 2007, at the International Motor Show, Segway and General Motors Europe announced a design collaboration resulting in the Opel Flextreme concept car, which featured integrated SEGWAY PT storage. More than 100 SEGWAY PTs were deployed in Beijing during the 2008 Summer Olympics to be used by its delegates. The SEGWAY PT was selected in part because it is a zero emissions transportation device and an environmentally friendly solution. The SEGWAY PTs were used by event and airport security, arena logistics personnel and the highly visible Olympic Ambassadors.

16.     Segway announced the Project P.U.M.A. prototype on April 7, 2009 as part of a development collaboration with General Motors.  The prototype leveraged existing dynamic stabilization technology and electric propulsion to address growing urban congestion and pollution issues.  The prototype debuted on *The Today Show*, with host Meredith Vieira taking a test ride.  On March 24, 2010, Segway introduced the EN-V Project at Expo 2010 in Shanghai, China.  Derived from the Project P.U.M.A. prototype, Segway collaborated with General Motors/SAIC on this concept, which set a vision for transportation in 2030.  The EN-V prototype was a fully functional, two-person vehicle that featured advanced dynamics, connectivity and sensory capabilities and could combat urban congestion while being environmentally friendly and fun.

17.     In March 2011, Segway expanded its business model and created the "Segway Experience Center Program."  The new program provided tour locations with the flexibility to be affiliated with Segway as an authorized tour operator, with the option to sell SEGWAY PTs.  That same month, Segway also worked with Gunstock Mountain Resort in Gilford, New Hampshire to pilot the SEGWAY x2 Experience Center Program on its property as it focused on transforming into a year round outdoor entertainment and adventure venue. SEGWAY PT tours, along with lift rides, tree top and zip line excursions, were added to Gunstock's summer operations.  Based on the success of the pilot program, Segway began targeting ski resorts across the globe to add SEGWAY PT tours to their summer operations. Also in March 2011, Patrolling Across America" kicked off.  The goal of the tour was to visit police departments, showcase the SEGWAY Patroller model's features and allow officers to test ride the models in their community. The nine-month tour logged 36,000 miles, visited more than

120 new police departments in 39 states and earned significant local and national media coverage.

18. In May 2011, Segway became the official title sponsor of MotoCzysz Racing, an electric motorcycle racing team, to promote electric motorsports and personal transportation. Team Segway Racing MotoCzysz earned first and second place in the Isle of Man Tourist Trophy Zero Race, second place in the FIM e-Power/TTXGP International Championship Race, and first place at the USBA/TTXGP Event.

19. By January 2012, Segway boasted a worldwide network of more than 250 distributor, dealer and experience center retail points in 80 countries across the globe, offering product, service and unique touring experiences. The international network included three dedicated and strategically located service center hubs in the United States, Germany, and Singapore.

20. In June 2012, in conjunction with the Smithsonian Institution, the world's largest museum and research complex, Segway launched Smithsonian Tours by Segway, the only personal transporter tour that departs from the National Mall at the National Museum of American History. That same month, in Segway's second year of Team Segway Racing MotoCzysz sponsorship, the team made history at the Isle of Man SES Tourist Trophy Race by being the first team to ever exceed a 100 mph lap, logging a speed in excess of 104 mph. The achievement was hailed as one of the greatest in the event's 105 year history. In September 2012, Segway launched the "A New Way to Play on Your Property" campaign to grow its SEGWAY PT tour program at ski resorts across the country. At that time, SEGWAY PT tours were featured at 14 ski resorts in the United States as part of summer operation activities.

21.     Segway Inc.'s sales of the i2 and x2 models ceased in March 2014, and were replaced by sales of more second generation models, the i2 SE and the x2 SE, which also include the patented LeanSteer™ technology.  A true and accurate copy of the manual included with the i2 SE and the x2 SE is attached hereto as Exhibit B.

## THE ASSERTED PATENTS

22.     DEKA is the owner of U.S. Patent No. 6,302,230 (the "'230 patent") which is attached as Exhibit C.  The '230 patent discloses and claims a personal transporter with a balance monitor and a method for using such a transporter.  Segway is the exclusive licensee under the '230 patent in the relevant consumer transporter field pursuant to a license agreement with DEKA.  Ninebot is an affiliate of Segway and a sub-licensee under the '230 patent.

23.     DEKA is the owner of U.S. Patent No. 7,275,607 (the "'607 patent") which is attached as Exhibit D.  The '607 patent discloses and claims improved controllers for a transporter.  Segway is the exclusive licensee under the '607 patent in the relevant consumer transporter field pursuant to a license agreement with DEKA.  Ninebot is an affiliate of Segway and a sub-licensee under the '607 patent.

24.     DEKA is the owner of U.S. Patent No. 9,188,984 (the "'984 patent") which is attached as Exhibit E.  The '984 patent discloses and claims improved controllers for a transporter.  Segway is the exclusive licensee under the '984 patent in the relevant consumer transporter field pursuant to a license agreement with DEKA.  Ninebot is an affiliate of Segway and a sub-licensee under the '984 patent.

## THE ASSERTED TRADEMARKS

25.     Segway owns numerous incontestable federal trademark registrations covering the SEGWAY mark at issue here, as detailed below:

| Mark Details | Status | Goods / Services |
|---|---|---|
| SEGWAY<br><br>RN: 2727948<br>SN: 76313604 | Registered: June 17, 2003<br>Renewed: June 17, 2013<br>Incontestable<br><br>First Use: December 3, 2001 | (Int'l Class: 12)<br><br>motorized, self-propelled, wheeled personal mobility devices, namely, [wheelchairs], scooters, utility carts, and chariots |
| **SEGWAY**<br><br>RN: 2769942<br>SN: 76342141 | Registered: Sept. 30, 2003<br>Renewed: Sept. 30, 2013<br>Incontestable<br><br>First Use: December 3, 2001 | (Int'l Class: 12)<br>motorized, self-propelled, wheeled personal mobility devices, namely, wheelchairs, scooters, utility carts, and chariots |
| SEGWAY<br><br>RN: 2891587<br>SN: 76343568 | Registered: October 5, 2004<br>Renewed: October 5, 2014<br>Incontestable<br><br>First Use: April 2, 2002 | (Int'l Class: 41)<br>training and instruction relating to the use, operation and maintenance of motorized self-propelled, wheeled personal mobility devices, namely, scooters |
| SEGWAY<br><br>RN: 2877870<br>SN: 76411837 | Registered: August 24, 2004<br>Renewed: August 24, 2014<br>Incontestable<br><br>First Use: April 2, 2002 | (Int'l Class: 37)<br>maintenance and repair of transportation devices and related equipment and accessories |
| SEGWAY<br><br>RN: 3101067<br>SN: 76343924 | Registered: June 6, 2006<br>Incontestable<br><br>First Use: December, 2001 | (Int'l Class: 25)<br>Men's, women's and children's clothing, namely, shirts, polo shirts, jerseys, tops, sweatshirts, t-shirts, baseball caps, visors, overalls, coats, jackets, headwear |

| Mark Details | Status | Goods / Services |
|---|---|---|
| SEGWAY<br><br>RN: 2780307<br>SN: 76343781 | Registered: November 4, 2003<br>Renewed: November 4, 2013<br>Incontestable<br><br>First Use: December 3, 2001 | (Int'l Class: 16)<br>publications and printed matter, namely, manuals, instruction guides, brochures, magazines, newsletters, pamphlets, decals, posters and calendars in the fields of transportation and personal mobility |
| SEGWAY<br><br>RN: 2805463<br>SN: 76343981 | Registered: January 13, 2004<br>Renewed: January 13, 2014<br>Incontestable<br><br>First Use: April 2, 2002 | (Int'l Class: 36)<br>warranty claims administration services, namely, processing warranty claims for transportation devices |
| SEGWAY<br><br>RN: 3240164<br>SN: 76344091 | Registered May 8, 2007<br>Incontestable<br><br>First Use: 2005 | (Int'l Class: 35)<br>providing advertising and marketing services, namely, promoting the sale of transportation devices in the nature of motorized, self-propelled, wheeled personal mobility devices, namely, scooters, utility carts and chariots, and related equipment through the preparation and distribution of printed and audio-visual promotional materials, by rendering sales promotion advice, and by preparing and placing advertisements for others |
| SEGWAY<br><br>RN: 2971242<br>SN: 76343895 | Registered: July 19, 2005<br>Renewed: July 19, 2015<br>Incontestable<br><br>First Use: May 7, 2003 | (Int'l Class: 39)<br>leasing and rental of motorized, self-propelled, wheeled personal mobility devices, namely, scooters |

Collectively, these marks are referred to herein as the "SEGWAY Marks." True and correct copies of the registration certificates for the SEGWAY Marks are attached hereto as Exhibits N-V, respectively.

26.     As a result of Segway's federal registrations for the SEGWAY Marks, and the incontestable status of these registrations, the SEGWAY Marks are conclusive evidence that (a) the marks are valid, (b) Segway is the owner of the marks, and (c) Segway has the exclusive right to use the registered marks. In addition, the registrations serve as constructive notice of Segway's claim of ownership, eliminating any justification or defense of good faith adoption and use made by a third party after the registrations issued in 2003. Segway is also entitled to nationwide priority for the SEGWAY Marks based on the filing dates of the applications (in this case, September 12, 2001, well before any use by Defendant).

27.     As indicated by the issuance of Segway's registrations on the Principal Register, the SEGWAY marks are inherently distinctive.

28.     Segway has invested substantially in the SEGWAY Marks since 2001.

29.     By reason of Segway's continuous and exclusive use and promotion of the SEGWAY Marks, as well as the uniqueness and distinctiveness of the SEGWAY Marks, consumers associate the SEGWAY Marks with a single source of the goods and services provided under the SEGWAY Marks. The relevant customers are likely to believe that Segway would naturally expand its current offerings to self-balancing personal transporters without handlebars, particularly the "hoverboard" or "electric skateboard" personal transporters being sold by Defendant. This further increases the likelihood of confusion caused by Defendant's infringing use of the SEGWAY Marks.

30. Segway has over the years taken great care to ensure that all products and services offered in connection with the SEGWAY Marks are of the highest quality and meet Segway's exacting standards. For example, in 2004, the U.S. Department of Transportation/Federal Highway Administration released a study entitled "Characteristics of Emerging Road and Trail Users and Their Safety," which found the SEGWAY PT to have the second shortest braking distance, highest eye heights, one of the smallest footprints and the quickest perception-reaction time. In 2006, a study by the German Federal Board for Road Traffic found the SEGWAY PT's braking, steering and general handling to be very favorable.

31. Segway maintains its high reputation in the United States and beyond. For example, *Popular Science* magazine awarded the SEGWAY PT with a 2002 "Best of What's New" award in the general technology category, and *TIME* magazine featured Segway's concept four-wheel ATV prototype as one of the "Best Inventions of 2004." Segway also has been featured in a number of other news publications, industry publications, and technical papers.

32. Segway has spent and spends considerable time, effort, and resources marketing, advertising, and promoting products and services offered under the SEGWAY Marks. In the last few years alone, for example, Segway has invested significant sums developing awareness of the SEGWAY Marks, including through print and digital advertising, sponsorships, tradeshows, social media, product placements, news releases, and other promotional materials.

33. As a result of Segway's efforts, the SEGWAY Marks are famous and distinctive, inherently or through acquired distinctiveness throughout the United States. The SEGWAY Marks were famous long before any use of SWAGWAY by Defendant.

34. As a result of Segway's efforts, the SEGWAY Marks have come to represent Segway and are of great value to Segway. The SEGWAY Marks identify and

distinguish Segway's goods and services from the goods and services of others and symbolize the goodwill of Segway's business.

**DEFENDANT'S INFRINGING MARKS**

35.      As noted above, Defendant recently adopted and began to use the confusingly similar mark, SEGAWAY, as a new name for competitive products.  This mark is referred to herein as the "Infringing SEGAWAY Mark."

36.      Defendant is also using a domain name incorporating the Infringing SEGAWAY Mark, segawayhoverboard.com.

a.      The Infringing SEGAWAY Mark is used extensively on Defendant's nationally accessible, interactive website at http://www.segawayhoverboard.com to promote its electric, two-wheeled, self-balancing personal transportation device.  For example, on its website, Defendant claims that its product is the "Official Segaway$^{TM}$ Hoverboard."  Defendant's featured Segaway Hoverboard product is labeled with the Infringing SWAGWAY Mark and is sold on the Defendant website.  *See* Segaway Hoverboard, http://www.segawayhoverboard.com.

37.      On information and belief, Defendant actively markets products and services using the Infringing SEGAWAY Mark to customers, including those located within this District.

38.      There is no need for Defendant to use the Infringing SEGAWAY Mark in connection with its business. Other than calling to mind and referring to SEGWAY, the name SEGAWAY bears no relationship to the goods or to Defendant.  On information and belief, the name SEGAWAY was intentionally selected by Defendant in order to trade on the SEGWAY Marks.

39.      On information and belief, the use of the Infringing SEGAWAY Mark by Defendant is likely to cause and has caused confusion in the marketplace.

40.     Defendant knew or should have known of Segway's prior use and registration of the SEGWAY Marks at the time it began using the mark and trade name SEGAWAY.  Indeed, the SEGWAY Marks are so famous in this field and generally that there is no way Defendant did not know of Segway's rights in the SEGWAY Marks at the time Defendant selected SEGAWAY from all possible names Defendant could have chosen for its new products, its business, and its company name.

41.     On information and belief, Defendant knew, or should have known, that its use of the Infringing SEGAWAY Mark would likely cause confusion, mistake, or deception among relevant consumers.

42.     Defendant's wrongful acts alleged herein have been deliberate, willful, and in disregard of Segway's rights.

43.     Defendant's wrongful acts alleged herein have permitted and/or will permit Defendant to earn revenues and profits on the strength of Segway's marketing, advertising, consumer recognition, and goodwill associated with its SEGWAY Marks.

44.     By reason of Defendant's wrongful acts alleged herein, Segway is likely to suffer, has suffered, and will continue to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that Defendant and/or the goods and services offered by Defendant are affiliated with, sponsored by, approved by, or originate from Segway.

45.     By reason of Defendant's wrongful acts alleged herein, Segway is likely to suffer, has suffered and will continue to suffer dilution of the distinctive quality of the SEGWAY Marks in Delaware.

46.     The harm to Segway caused by the use and promotion of the Infringing SEGAWAY Mark by Defendant is irreparable and will continue unless and until this Court enjoins Defendant and/or Defendant ceases all use of the Infringing SEGAWAY Mark.

## COUNT I – INFRINGEMENT OF '230 PATENT

47.     Plaintiffs re-allege, as if fully set forth herein, the averments contained in paragraphs 1-24.

48.     On information and belief, Segaway has been and is now directly infringing the '230 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States personal transporters that practice or embody at least claims 1 and 5 of the '230 patent, including but not limited to Segaway's electric vehicles labeled as "Segaway Smart X" and "Segaway Glide" (the "Segaway Products").  Segaway is therefore liable for direct infringement of the '230 patent under 35 U.S.C. § 271(a).

49.     On information and belief, the Segaway Products meet all the elements of at least independent claims 1 and 5 of the '230 patent.  According to the User's Manuals for the Segaway Products, attached hereto as Exhibits F and G, the Segaway Products meet all the elements of claim 1 and 5 of the '230 patent, which are demonstrated on an element-by-element basis in the claim charts attached as Exhibits H and I.

50.     On information and belief, Segaway has knowledge of the '230 patent or has acted with willful blindness to its existence.  Since at least October 2011, all Segway model i2 and x2 personal transporters have had affixed to them a label that reads "Patents: http://www.segway.com/downloads/pdfs/ReferenceManual.pdf."[1]     The Reference Manual, attached as Exhibit A, to which one is directed by this label contains, on pages 141 and 142, a list

---

[1]     The Reference Manual for the i2 and x2 personal transporters is now located at http://www.segway.com/media/1688/referencemanual.pdf.

of Segway patents and applications that cover the i2 and x2 personal transporters, including the '230 patent. Similarly, the manual for the i2 SE and x2 SE models, attached as Exhibit B, includes a notification that "The Segway Personal Transporter (PT) is covered by U.S. and foreign patents. For more information go to http://www.segway.com/patents.pdf." This link provides a document including a list of Segway patents and patent applications covering these products, including the '230 patent. These personal transporters were the original such personal transporters in the United States and world markets, and were recognized as pioneering and inventive, and therefore one would believe that they were almost certainly covered by United States patents. Further, Segaway has had actual knowledge of the '230 patent at least as of the filing of this complaint.

51. On information and belief, Segaway has been and is now indirectly infringing the '230 patent by actively inducing others, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 47-48 above, to directly infringe at least claims 1 and 5 of the '230 patent. On information and belief, distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described above directly infringe at least claims 1 and 5 of the '230 patent. Further, on information and belief, Segaway, by providing at least manuals, training, guides, videos and/or demonstrations, including the User's Manual attached hereto as Exhibits F and G, induces distributors, customers and/or end-users of the personal transporters identified and described in paragraphs 47-48 to perform acts intended by Segaway to cause direct infringement of at least claims 1 and 5 of the '230 patent. On information and belief, as discussed in paragraph 49, Segaway has knowledge of the '230 patent or has acted with willful blindness to its existence. Segaway is therefore liable for inducing infringement of the '230 patent under 35 U.S.C. § 271(b).

52.     On information and belief, Segaway has been and is now indirectly infringing the '230 patent by contributing to infringement by others of at least claims 1 and 5 of the '230 patent, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 47-48 above.   On information and belief, Segaway contributes to such infringement at least by providing to such distributors, customers and end-users, personal transporters or components thereof, which are specially made or adapted for use in an infringement of at least claims 1 and 5 of the '230 patent and are not staple articles of commerce suitable for substantial non-infringing use.   On information and belief, as discussed in paragraph 49, Segaway had knowledge or acted with willful blindness to the fact that the personal transporters or components thereof are specially made or adapted for use to infringe the '230 patent and are not staple articles of commerce suitable for substantial non-infringing use.   Segaway is therefore liable for contributory infringement of the '230 patent under 35 U.S.C. § 271(c).

53.     As a result of its infringement of the '230 patent, Segaway has damaged Plaintiffs.   Segaway is liable to Plaintiffs in an amount to be determined at trial that adequately compensates Plaintiffs for the infringement, which by law can be no less than a reasonable royalty.

54.     Segaway's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Plaintiffs for which there is no adequate remedy at law.   Unless enjoined by this Court, Segaway will continue to infringe the '230 patent.

## COUNT II – INFRINGEMENT OF '607 PATENT

55.     Plaintiffs re-allege, as if fully set forth herein, the averments contained in paragraphs 1-54.

56.    On information and belief, Segaway has been and is now directly infringing the '607 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States personal transporters that practice or embody at least claim 1 of the '607 patent, including but not limited to the Segaway Products.  Segaway is therefore liable for direct infringement of the '607 patent under 35 U.S.C. § 271(a).

57.    On information and belief, the Segaway Products meet all the elements of claim 1 of the '607 patent.  According to the User's Manuals for the Segaway Products, attached hereto as Exhibits F and G, the Segaway Products meet all the elements of claim 1 of the '607 patent, which are demonstrated on an element-by-element basis in the claim charts attached as Exhibits J and K.

58.    On information and belief, Segaway has knowledge of the '607 patent or has acted with willful blindness to its existence.  Since at least October 2011, all Segway model i2 and x2 personal transporters have had affixed to them a label that reads "Patents: http://www.segway.com/downloads/pdfs/ReferenceManual.pdf."[2]    The Reference Manual, attached as Exhibit A, to which one is directed by this label contains, on pages 41 and 142, a list of Segway patents and applications that cover the i2 and x2 personal transporters, including Patent Application Publication No. 20050121866, which is the published application that ultimately issued as the '607 patent.  Similarly, the manual for the i2 SE and x2 SE models, attached as Exhibit B, includes a notification that "The Segway Personal Transporter (PT) is covered by U.S. and foreign patents.  For more information go to http://www.segway.com/patents.pdf."  This link provides a document including a list of Segway patents and patent applications covering these products, including the '607 patent.  These personal transporters were the original such personal

---

[2]    The Reference Manual for the i2 and x2 personal transporters is now located at http://www.segway.com/media/1688/referencemanual.pdf.

transporters in the United States and world markets, and were recognized as pioneering and inventive, and therefore one would believe that they were almost certainly covered by United States patents. Further, Segaway has had actual knowledge of the '607 patent at least as of the filing of this complaint.

59. On information and belief, Segaway has been and is now indirectly infringing the '607 patent by actively inducing others, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 23-24 above, to directly infringe at least claim 1 of the '607 patent. On information and belief, distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described above directly infringe at least claim 1 of the '607 patent. Further, on information and belief, Segaway, by providing at least manuals, training, guides, videos and/or demonstrations, including the User's Manuals attached hereto as Exhibits F and G, induces distributors, customers and/or end-users of the personal transporters identified and described in paragraphs 55-56 to perform acts intended by Segaway to cause direct infringement of at least claim 1 of the '607 patent. On information and belief, as discussed in paragraph 58, Segaway has knowledge of the '607 patent or has acted with willful blindness to its existence. Segaway is therefore liable for inducing infringement of the '607 patent under 35 U.S.C. § 271(b).

60. On information and belief, Segaway has been and is now indirectly infringing the '607 patent by contributing to infringement by others of at least claim 1 of the '607 patent, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 55-56 above. On information and belief, Segaway contributes to such infringement at least by providing to such distributors,

customers and end-users, personal transporters or components thereof, which are specially made or adapted for use in an infringement of at least claim 1 of the '607 patent and are not staple articles of commerce suitable for substantial non-infringing use. On information and belief, as discussed in paragraph 58, Segaway had knowledge or acted with willful blindness to the fact that the personal transporters or components thereof are specially made or adapted for use to infringe the '607 patent and are not staple articles of commerce suitable for substantial non-infringing use. Segaway is therefore liable for contributory infringement of the '607 patent under 35 U.S.C. § 271(c).

61.     As a result of its infringement of the '607 patent, Segaway has damaged Plaintiffs. Segaway is liable to Plaintiffs in an amount to be determined at trial that adequately compensates Plaintiffs for the infringement, which by law can be no less than a reasonable royalty.

62.     Segaway's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Plaintiffs for which there is no adequate remedy at law. Unless enjoined by this Court, Segaway will continue to infringe the '607 patent.

## COUNT III – INFRINGEMENT OF '984 PATENT

63.     Plaintiffs re-allege, as if fully set forth herein, the averments contained in paragraphs 1-62.

64.     On information and belief, Segaway has been and is now directly infringing the '984 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States personal transporters that practice or embody at least claims 1, 8 and 15 of the '984 patent, including but not limited to the Segaway Products. Segaway is therefore liable for direct infringement of the '984 patent under 35 U.S.C. § 271(a).

65.     On information and belief, the Segaway Products meet all the elements of claims 1, 8 and 15 of the '984 patent.   According to the User's Manuals for the Segaway Products, attached hereto as Exhibits F and G, the Segaway Products meet all the elements of claims 1, 8 and 15 of the '984 patent, which are demonstrated on an element-by-element basis in the claim charts attached as Exhibits L and M.

66.     On information and belief, Segaway has knowledge of the '984 patent or has acted with willful blindness to its existence.   Since at least October 2011, all Segway model i2 and x2 personal transporters have had affixed to them a label that reads "Patents: http://www.segway.com/downloads/pdfs/ReferenceManual.pdf."[3]     The Reference Manual, attached as Exhibit A, to which one is directed by this label contains, on pages 41 and 142, a list of Segway patents and applications that cover the i2 and x2 personal transporters.   Similarly, the manual for the i2 SE and x2 SE models, attached as Exhibit B, includes a notification that "The Segway Personal Transporter (PT) is covered by U.S. and foreign patents.   For more information go to http://www.segway.com/patents.pdf."   This link provides a document including a list of Segway patents and patent applications covering these products, including the '984 patent.   These personal transporters were the original such personal transporters in the United States and world markets, and were recognized as pioneering and inventive, and therefore one would believe that they were almost certainly covered by United States patents.   Further, Segaway has had actual knowledge of the '984 patent at least as of the filing of this complaint.

67.     On information and belief, Segaway has been and is now indirectly infringing the '984 patent by actively inducing others, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in

---

[3]     The Reference Manual for the i2 and x2 personal transporters is now located at http://www.segway.com/media/1688/referencemanual.pdf.

paragraphs 63-64 above, to directly infringe at least claims 1, 8 and 15 of the '984 patent. On information and belief, distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described above directly infringe at least claims 1, 8 and 15 of the '984 patent. Further, on information and belief, Segaway, by providing at least manuals, training, guides, videos and/or demonstrations, including the User's Manuals attached hereto as Exhibits F and G, induces distributors, customers and/or end-users of the personal transporters identified and described in paragraphs 63-64 to perform acts intended by Segaway to cause direct infringement of at least claims 1, 8 and 15 of the '984 patent. On information and belief, as discussed in paragraph 66, Segaway has knowledge of the '984 patent or has acted with willful blindness to its existence. Segaway is therefore liable for inducing infringement of the '984 patent under 35 U.S.C. § 271(b).

68. On information and belief, Segaway has been and is now indirectly infringing the '984 patent by contributing to infringement by others of at least claims 1, 8 and 15 of the '984 patent, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 63-64 above. On information and belief, Segaway contributes to such infringement at least by providing to such distributors, customers and end-users, personal transporters or components thereof, which are specially made or adapted for use in an infringement of at least claims 1, 8 and 15 of the '984 patent and are not staple articles of commerce suitable for substantial non-infringing use. On information and belief, as discussed in paragraph 66, Segaway had knowledge or acted with willful blindness to the fact that the personal transporters or components thereof are specially made or adapted for use to infringe the '984 patent and are not staple articles of commerce suitable for substantial

non-infringing use.  Segaway is therefore liable for contributory infringement of the '984 patent under 35 U.S.C. § 271(c).

69.     As a result of its infringement of the '984 patent, Segaway has damaged Plaintiffs.  Segaway is liable to Plaintiffs in an amount to be determined at trial that adequately compensates Plaintiffs for the infringement, which by law can be no less than a reasonable royalty.

70.     Segaway's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Plaintiffs for which there is no adequate remedy at law.  Unless enjoined by this Court, Segaway will continue to infringe the '984 patent.

## COUNT IV – FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

71.     Plaintiffs re-allege, as if fully set forth herein, the averments contained in paragraphs 1-70.

72.     Defendant's use of the Infringing SEGAWAY Mark in connection with its business as described above constitutes use in commerce that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of Defendant's products and/or Defendant's business.

73.     Defendant's use of the Infringing SEGAWAY Mark as described above constitutes infringement of Segway's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

74.     On information and belief, Defendant's actions as described herein were undertaken and/or continued with full knowledge of Defendant's rights, thus constituting willful infringement.

75. The aforesaid acts of Defendant have caused and, without judicial intervention, will continue to cause Segway irreparable harm for which there is no adequate remedy at law.

### COUNT V – UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(A)

76. Plaintiffs re-allege, as if fully set forth herein, the averments contained in paragraphs 1-75.

77. Defendant's use of the Infringing SEGAWAY Mark constitutes use in commerce of a false or misleading designation of origin which is likely to deceive, to cause mistake or to cause confusion by leading consumers into believing that Defendant has an affiliation with Segway, or are sponsored or approved of by Segway, or are otherwise associated with or have obtained permission from Segway.

78. The aforesaid acts of Defendant constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79. On information and belief, Defendant's actions as described herein were undertaken and/or continued with full knowledge of Segway's rights, thus constituting willful unfair competition.

80. The aforesaid acts of Defendant have caused and, without judicial intervention, will continue to cause Segway irreparable harm for which there is no adequate remedy at law.

### COUNT VI – UNFAIR COMPETITION UNDER DELAWARE COMMON LAW

81. Plaintiffs re-allege, as if fully set forth herein, the averments contained in paragraphs 1-80.

82. This claim arises under Delaware common law for unfair competition, namely the unauthorized and confusing use of a mark similar to the distinctive SEGWAY name.

83.     Defendant's use of SEGAWAY creates a likelihood of confusion, mistake, or deception with the SEGWAY Marks.

84.     By reason of Defendant's wrongful acts alleged herein, Segway has suffered and will continue to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that the goods and services of Defendant are affiliated with, sponsored by, approved by, or originate from Segway.

85.     The aforesaid acts of Defendant constitute unfair competition in violation of Delaware common law.

86.     On information and belief, Defendant's actions as described herein were undertaken and/or continued with full knowledge of Segway's rights, thus constituting willful unfair competition.

87.     The aforesaid acts of Defendant have caused and, without judicial intervention, will continue to cause Segway irreparable harm for which there is no adequate remedy at law.

## COUNT VII – DILUTION UNDER 15 U.S.C. § 1125(C)

88.     Plaintiffs re-allege, as if fully set forth herein, the averments contained in paragraphs 1-87.

89.     This claim arises under federal law for trademark dilution with regard to the SEGWAY Marks.

90.     The SEGWAY Marks are famous and distinctive, inherently or through acquired distinctiveness throughout the United States.

91.     Defendant's commercial use of the Infringing SEGAWAY Mark began after the SEGWAY Marks became famous.

92.     Defendant's use of the Infringing SEGAWAY Mark is likely to cause the dilution of the famous SEGWAY marks.

93.     The aforesaid acts of Defendant constitute dilution under federal law in violation of 15 U.S.C. § 1125(c).

94.     The aforesaid acts of Defendant have caused and, without judicial intervention, will continue to cause Segway irreparable harm for which there is no adequate remedy at law.

## COUNT VII – DILUTION UNDER 6 DEL. C. § 3313

95.     Plaintiffs re-allege, as if fully set forth herein, the averments contained in paragraphs 1-94.

96.     This claim arises under Delaware state law for trademark dilution with regard to the SEGWAY Marks.

97.     The SEGWAY Marks are famous and distinctive, inherently or through acquired distinctiveness throughout the United States, including Delaware.

98.     Defendant's commercial use of the Infringing SEGAWAY Mark began after the SEGWAY Marks became famous.

99.     Defendant's use of the Infringing SWAGWAY Mark is likely to cause injury to the business reputation of Segway or the dilution of the distinctive quality of Segway's valid SEGWAY Marks.

100.    The aforesaid acts of Defendant constitute dilution under Delaware state law in violation of 6 Del. C. § 3313.

101.    The aforesaid acts of Defendant have caused and, without judicial intervention, will continue to cause Segway irreparable harm for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

102. Plaintiffs request that:

a. Judgment be entered that Segaway has directly and indirectly infringed the '230 patent, '607 patent and '984 patent literally and/or under the doctrine of equivalents, and that Plaintiffs are entitled to damages due to Segaway's infringement of the '230 patent, '607 patent and '984 patent pursuant to 35 U.S.C. § 284;

b. Judgment be entered that Segaway's infringement of the '230 patent, '607 patent and '984 patent is willful and knowing;

c. For an accounting, including a post-judgment accounting, to determine the damages to be awarded to Plaintiffs as a result of all of Segaway's making, using, selling, offering for sale, or importing of any product or service falling within the scope of any claim of the '230 patent, '607 patent, and '984 patent, or otherwise infringing any claim of the '230 patent, '607 patent, and '984 patent;

d. Judgment be entered that this is an exceptional case, and that Plaintiffs are entitled to its reasonable attorney's fees pursuant to 35 U.S.C. § 285;

e. Judgment be entered that Plaintiffs are entitled to interest and costs of suit, including pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284;

f. Judgment be entered permanently enjoining Segaway and its parents, subsidiaries, affiliates, successors, and assigns, and each of their officers, directors, employees, representatives, agents, attorneys, and all persons acting in concert or active participation with them, or on their behalf, or within their control, from making, using, selling, offering for sale, or importing any product or service falling within the scope of any claim of the '230 patent, '607 patent, and '984 patent, or otherwise infringing any claim of the '230 patent, '607 patent, and '984 patent;

g.    Judgment for Segway on its cause of action against Defendant for trademark infringement under 15 U.S.C. § 1114;

h.    Judgment for Segway on its cause of action against Defendant for unfair competition under 15 U.S.C. § 1125(a) and Delaware common law;

i.    Judgment for Segway on its cause of action against Defendant for dilution under 15 U.S.C. § 1125(c) and 6 Del. C. § 3313.

j.    Preliminary and permanent injunctive relief prohibiting Defendant, its officers, directors, agents, and employees and all those in active concert or participation with Defendant, including its manufacturers and distributors who receive actual notice of the judgment by personal service or otherwise, from the following:

i.    further use of SEGAWAY, either alone or in combination with other words, names, or symbols, on or in connection with the advertisement, marketing, offering for sale, or sale of any products including but not limited to the Segaway company name and the use of the domain name segawayhoverboard.com;

ii.    performing or committing any other acts falsely representing Defendant's products that are likely to cause confusion or mistake in the mind of the purchasing public, or to lead purchasers or the trade to believe that Defendant's products come from or are the products of Segway, or are somehow sponsored by, associated with, affiliated with, or connected with Segway, or that there is some relation, association, affiliation, or connection between Segway and Defendant;

iii.    from passing off, or inducing or enabling others to sell or pass off, Defendant's products or services as those of Segway;

iv.    from otherwise unfairly competing with Segway; and

v.     from diluting the distinctive quality of the SEGWAY Marks;

k.     That upon final judgment for Segway, this Court issue a Writ to the United States Marshall that directs the Marshall to seize and impound all of Defendant's advertising materials using the term SWAGWAY, and that all of these items be destroyed;

l.     That upon final judgment for Segway, Defendant be compelled to file with all applicable Secretaries of State a certificate of withdrawal and any other paperwork required to withdraw Defendant's registrations to transact business in any state under the name SEGAWAY;

m.     That upon final judgment for Segway, the then registrar of the domain name segawayhoverboard.com be directed to assign and transfer said domain name to Plaintiffs or at Plaintiffs' direction;

n.     An award of Plaintiffs' actual damages, trebled, and an accounting of and disgorgement of Defendant's profits; and

o.     For such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Segway, Deka, and Ninebot demand a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek J. Fahnestock*

_____

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mant.com
dfahnestock@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Tony V. Pezzano
Aleksandra King
A. Elizabeth Korchin
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY  10022
(212) 918-3000

Celine Jimenez Crowson
Joseph J. Raffetto
Scott Hughes
Cary E. Adickman
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC  20004
(202) 637-5000

Steven M. Levitan
HOGAN LOVELLS US LLP
4085 Campbell Avenue #100
Menlo Park, CA 94025
(650) 463-4000

Maureen K. Toohey
TOOHEY LAW GROUP LLC
340 Commercial Street
Manchester, NH  03101
(603) 206-0200

Ping Gu
ZHONG LUN LAW FIRM
36-37/F, SK Tower
6A Jianguomenwai Avenue
Chaoyang District
Beijing 100022
People's Republic of China
86-10-5957-2288

June 28, 2016